**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **DENNY BLANTON, JR.,** | : | **Case No. 1:23-cv-538** |
| **Petitioner,** | : | |
| **vs.** | : | **District Judge Susan J. Dlott**<br>**Magistrate Judge Chelsey M. Vascura** |
| **WARDEN, MANSFIELD CORRECTIONAL INSTITUTION,** | : | |
| **Respondent.** | : | |

## REPORT AND RECOMMENDATION

Petitioner, Denny Blanton, a state prisoner proceeding with counsel, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. This matter is before the Court to consider the Petition (Doc. 1), the Return of Writ (Doc. 11), Petitioner's Reply (Doc. 18), and the state court record (Doc. 10). For the reasons that follow, the undersigned **RECOMMENDS** that the Petition be **DENIED** and this action **DISMISSED WITH PREJUDICE**.

### I. FACTS AND PROCEDURAL HISTORY

In 2016, when Petitioner was eighteen years old and a senior in high school, he faced charges of raping a freshman girl. That case proceeded to trial, and a jury convicted him of two counts of rape, two counts of kidnapping, and sexually violent predator specifications. *See State v. Blanton*, No. 16CA1031, 2018-Ohio-1275, 2018 WL 1611408 (Ohio App. 4th Dist. 2018). He challenges those convictions and sentence in a separate habeas action in this Court. *See Blanton v. Warden, Mansfield Corr. Inst.*, 1:23-cv-537 (S.D. Ohio).

While Petitioner awaited trial on the rape case at the Adams County jail, he became involved in a jail fight club. These activities led to his convictions for kidnapping and felonious

assault that are the subject of this case. The Ohio Supreme Court summarized the underlying facts as follows:

> **{¶ 15}** While he was being held in jail on the rape charges, Blanton and two other inmates beat up Gary Lunsford, one of their cellmates. Lunsford told authorities that after the attack, Blanton and the others prevented him from seeking medical assistance for his injuries. Blanton was charged with felonious assault and kidnapping for his role in the attack on Lunsford. The trial court conducted a second jury trial on the charges stemming from Blanton's conduct while in jail.
>
> **{¶ 16}** Trial testimony revealed that Blanton and six other inmates in his cell block had participated in a "fight club." Blanton and two others, Devon Michael and Zack McKee, organized the matches. In the two weeks leading up to the attack on Lunsford, fights took place nearly every day. Lunsford, in his telling, was reluctant to participate; but Blanton, Michael, and McKee told him that if he didn't, they would make him fight all three of them at once. Lunsford said the three would often "congregate together" and that he "knew something was going to happen, [but not] to who or what."
>
> **{¶ 17}** One afternoon, Lunsford and another inmate wrestled while Blanton refereed. After they took a break, McKee walked up and "sucker punched" Lunsford. Michael joined in, and he and McKee forced Lunsford to the floor, taking turns kicking and punching him in his head and body. Once Michael and McKee had finished with him, Blanton walked over and punched Lunsford some 15 times in the head as he lay on the floor. A video of the attack shows that Lunsford was not moving much, if at all, during Blanton's initial attack.
>
> **{¶ 18}** After some time, Lunsford tried to get up. Blanton quickly ran over and delivered swift blows to Lunsford's head. Then Blanton backed Lunsford up against the wall and began pummeling him with his fists. Lunsford stumbled away and fell to the floor, motionless. Michael and McKee joined back in and stomped on Lunsford a few more times. The three attackers circled Lunsford as he lay on the ground. Each time Lunsford tried to stand, they knocked him back down. This went on until Lunsford finally collapsed onto one of the bunks.
>
> **{¶ 19}** Lunsford said he did not remember much of the assault, because he had been "knocked unconscious" and was "incapacitated." Another cellmate recounted: "I seen he was wrapped up in a ball with his hands over his face and then he was kicked in the back of his head and then his arms went limp. He was out for a few seconds and then he come back to."
>
> **{¶ 20}** Lunsford maintained that he did not immediately tell jail personnel that he had been hurt because he "wasn't permitted to" by his three attackers. He stayed in his bunk, and he covered his head with a blanket whenever a guard walked by. A fellow inmate brought him his food when the cafeteria trays were delivered.

> Lunsford's trio of attackers threatened that he would "get the same treatment again if [he] tried to hit the call box."
>
> **{¶ 21}** After a couple days of this, a corrections officer told Lunsford to get out of his bunk and pick up his tray at the cell's door. She saw that he had been beaten up and took him out of the cell. Lunsford had significant visible injuries: two black eyes; a busted lip; bruising on his face, neck, stomach, and back; and a gash on his head. He was taken to the hospital, where an emergency-room doctor concluded that he had sustained a concussion.
>
> **{¶ 22}** Blanton did not testify in his defense. A jury found him guilty of felonious assault and kidnapping for his attack on Lunsford. Blanton appealed those convictions, and the Fourth District affirmed. *See State v. Blanton*, 2018-Ohio-1278, 110 N.E.3d 1 (4th Dist.).

(Doc. 10, Ex. 53 at PageID 1169-71); *State v. Blanton*, 171 Ohio St.3d 19, 21-22, 215 N.E.3d 467 (2022). The trial court sentenced Petitioner to consecutive six-year prison terms on the kidnapping and felonious assault counts, to be served consecutively to the previously imposed sentences in the rape case. (Doc. 10, Ex. 12 at PageID 157-59).

### A. Direct Appeal

On November 21, 2016, Petitioner, represented by new counsel, filed a direct appeal to Ohio's Fourth District Court of Appeals, raising eight assignments of error. (Doc. 10, at PageID 162, 190). On March 27, 2018, the Court of Appeals affirmed his convictions and sentence. (*Id.* at PageID 281); *State v. Blanton*, 110 N.E.3d 1 (Ohio Ct. App. 2018). Petitioner filed a notice of appeal and a memorandum in support of jurisdiction, but the Ohio Supreme Court declined to accept jurisdiction. (Doc. 10, at PageID 363, 367-84, 486); *State v. Blanton*, 153 Ohio St.3d 1452 (2018).

### B. Post-conviction Proceedings

On January 24, 2018, Petitioner, through counsel, filed a petition to vacate or set aside his

judgment of conviction and sentence. (Doc. 10, at PageID 508). The trial court consolidated the jail and rape cases and dismissed both petitions without a hearing, finding all of Petitioner's claims barred by *res judicata*. (*Id*. at PageID 586-94).

Petitioner filed a timely consolidated appeal raising two assignments of error. (*Id*. at PageID 633, 665). On December 23, 2020, the Fourth District Court of Appeals affirmed the decision of the trial court, finding Petitioner's claims both barred by *res judicata* and lacking merit. (*Id*. at PageID 748, 768-81); *State v. Blanton*, Nos. 19CA1096, 19CA1097, 2020 Ohio 7018, 2020 WL 8093524 (Ohio App. 4th Dist. Dec. 23, 2020).

On February 8, 2021, Petitioner appealed to the Ohio Supreme Court, raising four propositions of law. (Doc. 10, at PageID 783-802). On April 28, 2021, the Ohio Supreme Court accepted his consolidated appeal and ordered the parties to brief the issues. (*Id*. at PageID 817). The Ohio Public Defender's Office, the Ohio Association of Criminal Defense Lawyers, and the Office of the Cuyahoga County Public Defender submitted an *amici curiae* brief in support of Petitioner. (*Id*. at PageID 1071). On November 9, 2022, the Ohio Supreme Court affirmed the decision of the Fourth District Court of Appeals. *State v. Blanton*, 171 Ohio St.3d 19 (2022).

## II. FEDERAL HABEAS PROCEEDINGS

On August 25, 2023, Petitioner, through counsel, filed the instant federal habeas petition. He asserts eight grounds for relief with the following supporting facts:

> **GROUND 1**: Petitioner's conviction for felonious assault is not supported by evidence sufficient to satisfy the Due Process Clause of the Fourteenth Amendment.
>
> **Supporting Facts**: A jail inmate sucker punched the victim and caused him to lose consciousness. Petitioner was present when this occurred. The trial judge did not instruct the jury regarding the limited circumstances under the Ohio complicity statute for imputing criminal liability to a defendant for the conduct of a third party. In the absence of such an instruction, the evidence of Petitioner's mere presence while the other inmate committed a felonious assault upon the victim was

insufficient to support Petitioner's conviction for felonious assault either as a principal offender or as an accomplice.

**GROUND 2**: Petitioner's conviction for kidnapping is not supported by evidence sufficient to satisfy the Due Process Clause of the Fourteenth Amendment.

**Supporting Facts**: The Ohio kidnapping statute requires proof that the accused restrained another of his liberty. The alleged victim of the kidnapping count was a fellow inmate in the county jail where Petitioner was confined. The alleged victim admitted the restraint on his liberty was due to the inherent nature of his jail sentence. The prosecution tried Petitioner for kidnapping on a theory that he deprived the alleged victim of his "freedom of choice" to seek protection or medical assistance from corrections officers. However, this theory would only support a conviction for the misdemeanor offense of coercion. The evidence was insufficient to support Petitioner's conviction for the felony offense of kidnapping.

**GROUND 3**: The denial of Petitioner's request for a jury instruction on the lesser included offense of misdemeanor assault violated his rights under the Due Process Clause of the Fourteenth Amendment.

**Supporting Facts**: Petitioner conceded he committed a misdemeanor offense of assault by striking the victim several times with his fists. He denied aiding and abetting another inmate who committed the felony crime of felonious assault by sucker punching the victim and causing him to lose consciousness. The trial court's refusal to instruct the jury on misdemeanor assault as a lesser included offense exposed Petitioner to a substantial risk of being convicted of the more serious crime of felonious assault due to the jury's natural inclination to convict him of some offense rather than to acquit him of any wrongdoing.

**GROUND 4**: A defective complicity instruction violated Petitioner's rights under the Due Process Clause of the Fourteenth Amendment.

**Supporting Facts**: The trial court failed to instruct the jurors that before Petitioner could be convicted under a theory of complicity for a felony committed by a principal offender, the prosecution needed to prove beyond a reasonable doubt that he solicited, procured, aided and abetted, or conspired with the principal offender, and shared the principal offender's culpable mental state. The incomplete instruction prejudiced Petitioner because it invited the jurors to find him guilty based on their own concept of vicarious criminal liability, rather than what the Ohio complicity statute actually requires.

**GROUND 5**: The State's failure to arrange for Petitioner's presence for a pretrial hearing on a motion to dismiss the indictment violated his rights under the Due Process Clause of the Fourteenth Amendment.

**Supporting Facts**: The trial court held a pretrial hearing on Petitioner's motion to dismiss the indictment as a remedy for the state's failure to preserve materially exculpatory evidence, to wit, a video recording of the assault on the victim. The state failed to make arrangements for Petitioner to be present for the hearing on the motion. The court ultimately denied the motion without receiving testimony from Petitioner regarding the circumstances underlying the absence or destruction of the missing video footage. Due to lack of overwhelming evidence of his guilt, Petitioner's involuntary absence from the pretrial hearing was not harmless beyond a reasonable doubt.

**GROUND 6**: The trial court's refusal to permit defense counsel to cross-examine the jail administrator about his failure to preserve potentially exculpatory video evidence violated Petitioner's right of confrontation and right to present a complete defense under the Sixth and Fourteenth Amendments.

**Supporting Facts**: The trial judge sustained the prosecutor's objection to defense counsel's attempt to cross-examine the jail administrator about the missing video footage. This unreasonable restriction on cross-examination deprived Petitioner of the opportunity to develop testimony undermining the completeness of the video footage that was offered into evidence, its value as corroborative evidence, and the integrity and thoroughness of the investigation. As a consequence, Petitioner's jury was left with the false perception that the video footage had been screened by the parties for relevancy, that the segments played for them contained the only relevant images, and that none of the deleted segments favored the defense position. Due to lack of overwhelming evidence of Petitioner'[s] guilt, the restriction on cross-examination was not harmless beyond a reasonable doubt.

**GROUND 7**: The State's failure to preserve video footage of the assault on the victim violated Petitioner's rights under the Due Process Clause of the Fourteenth Amendment.

**Supporting Facts**: The jail administrator failed to preserve video footage from a second camera that contained images of the assault on the victim from a different angle than the first camera. These images would have supported Petitioner's defense that he did not participate or have any involvement in the sucker punch inflicted by another inmate that caused serious physical harm to the victim. Due to the prosecutor's emphasis on the importance of the video evidence from the first camera, and the lack of overwhelming evidence of Petitioner's guilt, the failure to preserve the second camera footage was not harmless beyond a reasonable doubt.

**GROUND 8**: Petitioner was deprived of his Sixth and Fourteenth Amendment right to the effective assistance of trial counsel due to multiple instances of deficient performance.

**Supporting Facts**: Petitioner was prejudiced by his trial attorneys' deficient performance in the following respects:

1) Trial counsel failed to insist on his client's presence for the pretrial hearing on his motion to dismiss the indictment for failure to preserve exculpatory evidence, and failed to subpoena the jail administrator to testify about the missing video footage. Petitioner could have testified that the jail administrator had showed him video footage from the second camera that would have refuted the prosecutor's argument that Petitioner attacked an unconscious, defenseless man.

2) It is a legal impossibility for an inmate to kidnap another inmate confined with him in the same jail. Trial counsel failed to adequately pursue this line of defense during the jury trial.

3) The alleged threats made against the victim to discourage him from requesting assistance (if proven) would violate the Ohio misdemeanor coercion statute. Trial counsel failed to move for dismissal of the kidnapping count on the ground that the legislature intended that the coercion statute should prevail over the general kidnapping statute in this factual scenario.

4) The trial court's complicity instruction omitted the statutory requirements for accomplice liability. Although trial counsel lodged a general objection to a complicity instruction, he failed to specifically object to the accuracy and completeness of the instruction as given. This omission was prejudicial because the evidentiary basis for conviction under a complicity theory was extremely weak to non-existent.

5) Trial counsel advised Petitioner that he should not testify in his own behalf because the prosecutor had an absolute right to impeach him with convictions previously entered in a rape and kidnapping trial. This advice was premised on an incorrect statement of the law. Petitioner relied on this erroneous advice. As a consequence Petitioner was deprived of his right to testify and to inform the jury of the facts supporting his innocence of the felony charges.

6) Trial counsel failed to file an affidavit to disqualify the trial judge for bias arising from the relationships between the judge and participants in an earlier trial on rape and kidnapping charges. The judge's ongoing bias and lack of impartiality influenced his rulings and deprived Petitioner of an opportunity to develop evidence regarding the intentional failure of the jail administrator to preserve exculpatory evidence.

The outcome of the trial turned on the jury's assessment of the credibility of the jail inmates who testified against him. These inmates had prior criminal records and motive to lie. The unprofessional errors

> of trial counsel tipped the credibility scale squarely in favor of the prosecution. There is a reasonable probability that the jury would have returned not guilty verdicts if trial counsel had not engaged in the multiple instances of deficient performance listed above.

(Doc. 1, at PageID 5-14). Respondent filed the state court record, (Doc. 10), and a Return of Writ, (Doc. 11), arguing that all of Petitioner's claims lack merit or are procedurally defaulted. Petitioner filed a Traverse, (Doc. 18), and the matter is ripe for review.

## III. STANDARDS OF REVIEW

### A. AEDPA

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit explained the meaning of the standards found in § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412-13.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

Under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)). Moreover, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**B. Procedural Default**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a

federal court. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted." It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard). First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the court determines that a state procedural rule was not complied with and the rule has an adequate and independent state ground, then the petitioner may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. In order to establish cause, a petitioner must show that "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001).

## IV. DISCUSSION

For the reasons that follow, the undersigned concludes that Petitioner's claims are either procedurally defaulted or lack merit.

### A. Grounds One and Two – Sufficiency of the Evidence

In his first and second grounds for relief, Petitioner argues the evidence presented at trial was insufficient to convict him of felonious assault and kidnapping. He argues the evidence was too light with respect to the felonious assault conviction because he did not throw the punch that rendered Lunsford unconscious and caused him serious physical harm. (Doc. 1, at PageID 5). As to the kidnapping count, Petitioner claims it was legally impossible to kidnap Lunsford because Lunsford was already locked up in the county jail and any restraint on his liberty was due to the inherent nature of his jail sentence. (*Id*. at PageID 7).

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established the standard federal habeas courts must use for evaluating constitutional claims challenging the sufficiency of the evidence. Because the Due Process Clause requires the state to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, "the relevant question" in assessing the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Under *Jackson*, the state is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).

The trier of fact resolves conflicts in testimony, weighs the evidence, and draws reasonable inferences. *Jackson*, 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *Id.* at 318-19 & n.13; *see also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Under AEDPA, federal habeas review of a claim challenging the sufficiency of the evidence is even more stingy. As the Sixth Circuit explained in *Brown v. Konteh*, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." 567 F.3d at 205. The habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original). The Sixth Circuit went on to emphasize:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses with which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based upon the evidence introduced at trial.

567 F.3d at 205. All in all, a habeas petitioner raising a sufficiency-of-the-evidence claim faces "a 'nearly insurmountable hurdle.'" *James v. Corrigan*, 85 F.4th 392, 395 (6th Cir. 2023) (quoting *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011)).

Here, the jury found Petitioner guilty of felonious assault and kidnapping, and he raised sufficiency-of-the-evidence challenges on direct appeal to the Fourth District Court of Appeals. (Doc. 10, at PageID 191, 205-11). The state appellate court began its analysis by identifying and setting forth the applicable sections of the Ohio Revised Code governing those offenses, as well

as pertinent definitions. *Blanton*, 110 N.E.3d at 12, 18 (referencing O.R.C. § 2903.11(A)(1) (felonious assault) and § 2905.01(B)(2) (kidnapping)); *see Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (noting the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law") (quoting *Jackson*, 443 U.S. at 324 n.16). The state court then thoroughly analyzed the evidence that supported Petitioner's convictions and found it sufficient. *Blanton*, 110 N.E.3d at 11-22, ¶¶ 11-62.

**1. Felonious Assault**

The Court starts with the felonious assault conviction. Ohio Revised Code § 2903.11(A)(1) sets forth the crime of felonious assault and provides that "No person shall knowingly . . . cause serious physical harm to another." The Revised Code further states: "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." O.R.C § 2901.22(B). Serious physical harm includes harm that produces "temporary, substantial incapacity" or "acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." O.R.C. § 2901.01(A)(5)(c), (d), and (e).

In a detailed analysis, the state appellate court determined the evidence was enough to show Petitioner knowingly caused serious physical harm to Lunsford. The evidence at trial established that supervision in the Adams County jail was seriously lacking, and the inmates set up a fight club for entertainment. The state appellate court noted the following:

> {¶ 15} At trial, the jury saw surveillance footage from the jail's video system which showed the attack on Gary Lunsford by Appellant and the two other inmates. Lunsford identified his attackers as he testified and the tape was shown. In support of his argument hereunder, Appellant points to an approximate 2-4 minute interval between the time when Lunsford sustained a "sucker punch" by another inmate, Zach Mckee, and when Appellant "entered" into the fray. Appellant argues this

evidence eliminates him as the principal offender of the infliction of the blow that allegedly resulted in the serious physical harm to Lunsford. Appellant also argues that the testimony is insufficient to permit a rational trier of fact to find beyond a reasonable doubt that he acted collectively to cause serious physical harm to Lunsford.

{¶ 16} Based upon our review of the videotape and the testimony, however, we disagree. As the State played the videotape, Gary Lunsford identified himself and several other inmates: Robert Long, Mark Mefford, Zach McKee, Devon Michaels, and Appellant. Mark Mefford testified that during the time frame between June 5, 2016 and June 20, 2016, fights were organized in the cell by Appellant. Specifically, Mefford testified: "Blanton, he was the main spoke of it, he kept saying, I want to see some wrestling, I want to see some action in here, and it was for their amusement." Mefford testified the fighting occurred "almost every night to every other night." * * *

{¶ 17} Gary Lunsford also testified these activities were going on daily during the two weeks prior to his being injured. And, Lunsford also identified Appellant as the instigator of the wrestling and fights. Lunsford testified "if you didn't fight, especially if you didn't do what they said they was going to beat you up." He testified "they" referred to Zack McKee, Devon Michaels, and Appellant.

{¶ 18} Regarding the June 18, 2016 altercation, Lunsford testified that McKee, Michaels, and Appellant "made him wrestle" Josh Gray. If he refused, his alternative was to fight the others. On that day, when Lunsford and Gray wrestled and one was pinned, Appellant would restart the match. Lunsford testified that at one point, McKee "sucker punched" him. While Lunsford was lying on the ground, Appellant was hitting him. However, Lunsford testified he did not recall Appellant hitting him because he was unconscious. He was incapacitated and unable to move.

{¶ 19} Inmate Mark Mefford's testimony also described the June 18, 2016 incident:

> A: That night, Mr. Blanton got the idea that they were going to throw, he said we were going to throw the mats on the floor and see a wrestling match. And when he put the mats on the floor he said that he, Mr. Blanton, said that he wanted Zack McKee and Josh Gray to wrestle for them for their amusement.
>
> Q: Was it Zack McKee or Gary Lunsford?
>
> A: Gary Lunsford and Josh Gray.
>
> * * *
>
> Q: So how long did you observe that wrestling match?

A: Approximately about 20 to 30 minutes.

* * *

A: Josh and Gary Lunsford. They ended up stopping and Josh Gray goes over to the sink to get himself a drink and he is worn out and Gary he was about ready to get up, and then before he initially gets up Mr. McKee upper cuts him in the mouth knocking him back, and then he started repeatedly hitting him several more times. * * * Gary Lunsford, when he was still on the floor. Well, this lasted for approximately maybe 2–3 minutes and Mr. McKee and Devon Michaels hitting him. And Gary he unconscious for like a few minutes, two at the most. At that time he was on the floor.

Q: Who is he?

A: Mr. Gary Lunsford and at the time he was on the floor Mr. Blanton proceeded to come over and he started hitting him. * * *

Q: My question is, was he hitting him with his hands, was he kicking him with his foot, what part of Mr. Blanton's body was he using to?

A: Fists and feet.

Q: Okay. How did you know that Gary Lunsford was unconscious?

A: Because he wasn't moving.

{¶ 20} Another inmate, Robert Long, also described the June 18, 2016 incident: "Zack McKee and Devon Michaels [was] beating Gary Lunsford, and then after that Blanton went over and started punching on Lunsford." Long also described Lunsford's becoming unconscious: "I seen he was wrapped up in a ball with his hands over his face and then he was kicked in the back of his head and then his arms went limp. He was out for a few seconds and then he come back to." Regarding the brief cessation of fighting, long testified, afterwards, he saw Appellant punch Lunsford but did not observe Appellant kicking him.

{¶ 21} The above testimony given by inmates Mefford, Long, and the victim, Inmate Lunsford, demonstrates that Appellant set into motion the sequence of events which resulted in serious physical harm to Lunsford. We find the facts and circumstances indicate Appellant's awareness of the probability that his conduct would result in serious physical harm to Lunsford. Appellant is responsible for the natural and foreseeable consequences that follow in the ordinary course of events unfolding as a result of Appellant's actions as instigator of the June 18, 2016 altercation. Furthermore, the facts and circumstances demonstrate Appellant was an active participant in the actual physical violence.

* * *

{¶ 31} Here, Appellant's argument assumes that the only serious physical harm Lunsford suffered was a "possible concussion" after the sucker punch which rendered him, via eyewitness and admittedly not expert opinion, unconscious. We disagree. The surveillance footage demonstrates Lunsford was obviously weakened and had fallen down when Blanton administered repeated blows to Lunsford's head. Mefford described Lunsford's injuries as follows:

> Q: After seeing Mr. Blanton, Mr. McKee and Mr. Michaels strike Gary did Gary have any injuries?
>
> A: Yes, Ma'am. * * *
>
> A: I seen blood coming out of [Gary's] nose and stuff and several lacerations around his face and head area.

{¶ 32} Lunsford was [] taken to the Adams County Hospital. At trial, he identified State's exhibits 1, 2, 3, 4, 5, and 7, photographs of his injuries which depicted two black eyes; bruising of his eyes, ear, neck, stomach, and back; a busted lip; and a gash on his head. Dr. Richard Durbin, the emergency room doctor who treated Lunsford at Adams County Regional Medical Center on June 21, 2016, testified Lunsford had "obvious" injuries to his face, and gave a history of being "knocked unconscious." Based on the subjective history, Dr. Durbin ordered a CT scan of the head and x-rays of the left elbow and chest. He testified there were no fractures seen.

{¶ 33} On cross-examination, Dr. Durbin testified Appellant was discharged in "fair" condition back to the jail with a diagnosis of soft tissue injuries to the head, face, left lateral chest wall and left elbow. He was advised to follow up with the physician at the jail. On redirect, Dr. Durbin testified he "believed" that Lunsford sustained a concussion.

{¶ 34} Even if Appellant was not responsible for the blow which may or may not have rendered Lunsford unconscious and caused a "possible concussion," we find sufficient evidence that Appellant caused serious physical harm. * * *

{¶ 35} The *Henry* court observed that serious physical harm has been found where a victim sustains a bloody cut and/or significant swelling to the face because this is sufficient to establish serious physical harm in that it constitutes "temporary, serious disfigurement." *Id.* at ¶42. Courts have also determined that "serious physical harm" exists "'where the injuries caused the victim to seek medical treatment.'" *Adams, supra,* at ¶30, quoting *Scott, supra,* at ¶3.

> {¶ 36} Within his sufficiency argument, Appellant is quick to discredit the testimony of Lunsford and the other "criminals." We are mindful, however, "'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.'" *State v. Reyes–Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, 2016 WL 3216241, ¶ 17, quoting *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, 2014 WL 1875931, ¶23. "A sufficiency assignment of error challenges the legal adequacy of the State's prima facie case, not its rational persuasiveness." *State v. Oldaker,* 4th Dist. Meigs No. 16CA3, 2017-Ohio-1201, 2017 WL 1193818, ¶ 41 [internal quotation omitted]. "That limited review does not intrude on the jury's role 'to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio v. United States,* [577 U.S. 237, 243 (2016)], quoting *Jackson* at 319, 443 U.S. 307.
>
> {¶ 37} Any doubts one might have as to the credibility of the witnesses' testimony is dispelled by the surveillance footage which demonstrates Appellant restarting the wrestling match between Lunsford and Gray, and then repeatedly and viciously striking Lunsford's head later when he is lying on the floor. The jury further had the photographic depiction of Lunsford's serious, temporary disfigurement to his face and body.

*Blanton*, 110 N.E.3d at 12-18.

In the Traverse, Petitioner argues the state appellate court got it wrong because the evidence at trial established he committed only a simple assault. According to Petitioner, the only serious physical harm that occurred was when McKee "sucker-punched" Lunsford and knocked him unconscious, which occurred two to four minutes before Petitioner entered the fray. (Doc. 18, at PageID 2098). Petitioner notes that an emergency room physician testified "no fractures were seen" and none of Lunsford's injuries, other than the suspected concussion, required medical treatment. (*Id*. at PageID 2097 (citing Doc. 10-5, at PageID 1827-35)). Lastly, Petitioner argues the state court erred by considering whether he was responsible for the felonious assault under a foreseeability or complicity theory because the State charged him as a principal offender and not under a theory of complicity. (*Id*. at PageID 2098-2102).

Applying the required double-layered deferential standard, the state appellate court's sufficiency determination is neither contrary to nor an unreasonable application of established

Supreme Court precedent. The Fourth District Court of Appeals' decision evinces the incorporation of the *Jackson* standard in Ohio law, and the court reasonably determined that the State provided sufficient evidence to the jury to satisfy the *Jackson* standard. In addition to concluding that Petitioner set into motion the sequence of events that resulted in serious physical harm to Lunsford, the state court also determined that Petitioner was an active participant in the physical violence against Lunsford.

Petitioner essentially asks this Court to dissect the altercation frame by frame in order to find that he did not cause serious physical harm to Lunsford because he did not throw any punches until after Lunsford lost consciousness. But under Ohio law, "[h]arm heaped on top of serious physical harm must itself be considered serious physical harm even if under different circumstances it may not have risen to that level." *Blanton*, 110 N.E.3d at 16, ¶ 30 (quoting *In re Miller*, No. 2000-A-0014, 2002-Ohio-3360, 2002 WL 1400544, *5 (Ohio App. 11th Dist. June 28, 2002) (noting that "[i]f, in fact, appellant did not enter the melee until the victim had already suffered serious physical harm, his actions are all the more inculpatory")). Here, the evidence, viewed in a light most favorable to the prosecution, is more than sufficient to support Petitioner's conviction. The evidence at trial established that Petitioner and two other inmates assaulted Lunsford for their own amusement and sport. Mark Mefford testified that Petitioner was the main organizer of the fights. (Doc. 10-4, at PageID 1776-77). The State presented evidence that Petitioner punched Lunsford multiple times in the head while he lay on the floor "not moving much, if at all . . . ." *Blanton*, 171 Ohio St.3d at 22, ¶ 17. When Lunsford tried to get up, Petitioner "ran over and delivered swift blows to Lunsford's head." *Id*. at ¶ 18. Lunsford "stumbled away and fell to the floor, motionless." *Id*. By the end of the attack, Lunsford

suffered a possible concussion, two black eyes, bruising to his face and body, a busted lip, and a gash to his head. (*See, e.g*. Doc. 10-4, at PageID 1627-32; Doc. 10-5, at PageID 1813-1840).

Petitioner argues the state court erred by considering whether he was responsible for the felonious assault under a foreseeability or complicity theory when he was charged as a principal offender. However, under Ohio law, "an offender need not be charged under R.C. 2923.03 [the complicity statute] but instead may be charged with complicity in terms of the principal offense." *State v. McFarland*, 162 Ohio St.3d 36, 43 (2020) (finding "the state was not required to explicitly allege complicity") (citing *State v. Skatzes*, 104 Ohio St.3d 195 (2004)).

Because Petitioner has not shown that the Fourth District's application of *Jackson* is objectively unreasonable or based on an unreasonable determination of the facts, his first ground for relief must be **DENIED**.

**2. Kidnapping**

Ohio Revised Code § 2905.01(B)(2) sets forth the crime of kidnapping and provides that "[n]o person, by force, threat, or deception" shall knowingly "[r]estrain another of the other person's liberty" under "circumstances that create a substantial risk of serious physical harm to the victim . . . ." Petitioner argues the evidence was insufficient to support his conviction under this statute for two reasons. First, Petitioner argues it was legally impossible for him to restrain Lunsford's liberty because Lunsford was in jail such that his liberty was already restrained. (Doc. 18, at PageID 2102-04). Next, Petitioner notes that during closing argument, the State argued he "took [Lunsford's] freedom of choice to seek protection or medical assistance from the corrections officers." (*Id*. at PageID 2103). Petitioner asserts that taking Lunsford's freedom of choice, if believed, constitutes the misdemeanor offense of coercion, not felony kidnapping.

The state court of appeals flatly rejected this argument. The court noted that "prisoners do not shed all Constitutional rights at the prison gate," and "[i]nmates in Ohio jails have various rights, subject to reasonable restrictions." *Blanton*, 110 N.E.3d at 18-19. The court made the following findings:

> {¶ 45} As is mandated by federal and state law, jail inmates and prisoners do not lose all liberties by the fact of their incarceration in a county jail or state prison facility. They do not lose the rights such as receiving mail, accessing telephones, taking showers, receiving visitors, and receiving medical care. Nothing in the research indicates Lunsford lost the right to move freely about the jail cell, absent some violation of conduct or pursuant to a disciplinary procedure, or to contact the jailer and request medical care.
>
> {¶ 46} The testimony at trial demonstrated that Lunsford was within Appellant's power and beyond immediate help, as well as compelled to stay out of the view of jail personnel. We find Appellant's "impossibility" argument has no applicability to these facts and thus, without merit.
>
> {¶ 47} At trial, the prosecutors argued that Appellant threatened Lunsford and thereby took his "freedom of choice" to seek protection or medical assistance. Appellant argues the State's evidence demonstrated, at best, an effort by Appellant to restrict Lunsford's freedom of choice and therefore, should have been prosecuted for violation of the coercion statute, a misdemeanor of the second degree. Appellant asserts that the State improperly elevated, to first degree felony level, conduct that the General Assembly intended to punish less seriously as a misdemeanor. R.C. 2905.12 (A)(1), coercion, provides that "No person, with purpose to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice, shall * * * [t]hreaten to commit any offense." However, we are not persuaded.
>
> {¶ 48} Lunsford testified he was unable to get medical help for two days after the attack because McKee, Michaels, and Appellant told him he was not allowed to "hit the call box." They told him if he tried to call for help, he would "get the same treatment again." Lunsford specifically testified Appellant told him, "don't move or your (sic.) going to get it again." Because he didn't want to get attacked again, Lunsford covered his head whenever a jailer walked through so he wouldn't be seen. When the inmates' food trays were served, he would lay on his bunk covered up. Lunsford testified either McKee, Michaels, or Appellant would get his tray and hand it to him so Lunsford's injuries would not be discovered and no one would get into trouble. Lunsford's injuries were finally noticed when the jailer ordered him to bring his tray to her, and she saw the marks on his face and body.

{¶ 49} Lunsford's testimony was corroborated by Mark Mefford, who testified that on June 18 and 19, 2016 when the food was delivered to their cell, Lunsford did not get up because "[h]e was too scared and he was told not to get up because of the laceration on his face," by "McKee, Blanton, and Michaels." And, on cross-examination, when asked who was in charge of the cell, Mefford replied: "It seemed to be that it was all three, Mr. McKee, Mr. Blanton, and Mr. Michaels."

* * *

{¶ 53} Appellant asserts that restraining Lunsford's freedom to seek medical help, if it occurred, represents conduct punishable by two separate statutes with different penalties. Under the general statute of kidnapping, R.C. 2905.01(B)(2), a conviction results in a first-degree felony. Under the special provision of coercion, R.C. 2905.12(A)(1), a conviction results in a misdemeanor. Therefore, appellant contends that the statutes are definitely in conflict and the special provision of coercion must prevail. We disagree.

{¶ 54} To be considered irreconcilable, the statutes must first prohibit the same conduct, specifically the conduct of which appellant was convicted. Appellant would have this court conclude that threatening Lunsford directly or indirectly is the same conduct constituting coercion and kidnapping.

{¶ 55} If appellant had committed coercion by threatening Lunsford in some manner in order to prevent him from seeking medical attention, separate conduct still exists that results in more than a violation of coercion. This separate conduct is the fact that Appellant's threat also created a substantial risk of physical harm to Lunsford.

{¶ 56} Appellant is correct in asserting that inherently, kidnapping includes the act of coercion. However, acts committed under the coercion statute do not necessarily violate the kidnapping statute. A person coerced into refraining from action he or she is legally permitted to do may face a substantial risk of personal or professional harm, but not necessarily a substantial risk of physical harm. Violations of the two statutes result from different conduct. The statutes prohibit separate and distinct offenses and therefore, the statutes are reconcilable.

{¶ 57} Appellee chose to prosecute Appellant on the conduct of kidnapping and not for the conduct of coercion. "The mere fact that appellant's conduct violates more than one statute does not force the state to prosecute him under the lesser statute." *Sufronko*, *supra,* at 509, 664 N.E.2d 596; *State v. Cooper,* 66 Ohio App.3d 551, 553, 585 N.E.2d 868, 870 (1990).

*Id*. at 19-21.

At base, Petitioner invites this Court to substitute its own reading of Ohio law for that of Ohio's Fourth District Court of Appeals. This the Court may not do. On habeas corpus review, this Court is bound by the Ohio courts' interpretation and application of Ohio law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (reiterating that on habeas review, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). *See also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

The state court of appeals resolved the issue of whether, as a matter of state law, an inmate may restrain the liberty of another inmate for purposes of Ohio's kidnapping statute. The question for this Court is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). The undersigned finds, after applying the required double-layered deferential standard, that the state appellate court's sufficiency determination is neither contrary to nor an unreasonable application of established Supreme Court precedent. The evidence at trial was sufficient to prove that Petitioner knowingly restrained Lunsford's liberty and movement within his jail cell by preventing him from seeking medical treatment for his serious injuries under circumstances that created a substantial risk of serious physical harm. Accordingly, Petitioner's second ground for relief must be **DENIED**.

**B. Ground Three – Denial of Lesser Included Offense Instruction**

In his third ground for relief, Petitioner argues the trial court violated his due process rights by denying his request for a jury instruction on the lesser included offense of assault. (Doc. 1, at PageID 8). He asserts that the trial court's error "exposed [him] to a substantial risk

of being convicted of the more serious crime of felonious assault due to the jury's natural inclination to convict him of some offense rather than to acquit him of any wrongdoing." (*Id.*) For his part, Respondent argues Petitioner's third ground for relief is non-cognizable. (Doc. 11, at PageID 2050-51).

Petitioner's claim fails. "The Supreme Court . . . has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case." *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014) (citing *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980)). Because there is no clearly established Supreme Court precedent entitling Petitioner to an instruction on lesser included offenses in a non-capital case, Petitioner's jury instruction claim fails under 28 U.S.C. § 2254(d)(1). *See also Davis v. Cargor*, No. 2:24-cv-12042, 2025 WL 1789638, at *6 (E.D. Mich. June 27, 2025) (same).

And Petitioner has not shown that the failure to give a lesser included offense instruction on simple assault was an error "so egregious' that it rendered his entire trial 'fundamentally unfair." *Phillips v. Mackey*, No. 25-3391, 2025 WL 3436777, *2 (6th Cir. Nov. 6, 2025) (quoting *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1078 (6th Cir. 2015)). The Ohio Court of Appeals upheld the trial court's determination that the evidence at trial did not support a jury instruction on simple assault. *See Blanton*, 110 N.E.3d at 22-24. "Where a state court has reviewed a habeas petitioner's request for a lesser-included offense instruction and concludes that it was not warranted by the evidence presented at trial, 'that conclusion is axiomatically correct, as a matter of state law.'" *Evans v. Voorhies*, No. 1:06-cv-746, 2007 WL 2891003, at *16 (S.D. Ohio Sept. 28, 2007) (quoting *Bagby v. Sowders,* 894 F.2d 792, 795 (6th Cir. 1990)).

For these reasons, Petitioner's third ground for relief must be **DENIED**.

### C. Ground Four – Defective Complicity Instruction

In his fourth ground for relief, Petitioner argues the trial court's complicity instruction deprived him of due process because it failed to define aiding and abetting and failed to set forth the culpable mental state required for complicity. Specifically, Petitioner notes the trial court's instruction omitted the substantive requirements for vicarious liability from paragraph two and the aiding and abetting language from paragraph nine of Ohio's model jury instructions. (Doc. 18, at PageID 2110, citing OJI § 523.03(B)). According to Petitioner, "[w]ithout an explanation of the mens rea and actus rea elements of complicity, the court's open-ended instruction invited the jurors to find Blanton guilty based on their own concept of vicarious wrongdoing, rather than what the Ohio complicity statute actually requires." (*Id.* at PageID 2112).

Respondent argues this ground for relief is procedurally defaulted because trial counsel failed to object to the substance of the complicity instruction at trial. (Doc. 11, at PageID 2054-55). Respondent points out that the Ohio Court of Appeals enforced the contemporaneous objection rule by noting counsels' failure to object and reviewing the claim for plain error. (*Id.*). The undersigned agrees that Petitioner procedurally defaulted this ground for relief.

The record reflects that prior to closing arguments, the trial court asked the defense team if they "wish[ed] to object to the inclusion of complicity." (Doc. 10-5, at PageID 1905-06). Defense counsel stated: "Your Honor, I don't think, complicity . . . has been proven or shown in the evidence presented here. I think they were all separate acts, they were not acting together, I don't think it's one joint venture, Your Honor." (*Id.* at PageID 1906). The court overruled counsel's objection, stating "I do intend to include the complicity under 523.01 of the Ohio Jury Instructions . . . ." (*Id.*)

Although trial counsel objected, initially, to the inclusion of a complicity instruction, counsel did not object to the *substance* of the court's actual instruction or propose an alternative instruction before the case was submitted to the jury for deliberation. It is apparent from the trial transcript that the trial court provided counsel with a copy of the proposed instructions, and the parties discussed the instructions during a lunch recess. (*Id*. at PageID 1912-14). Back on the record, the trial court noted several changes to the proposed instructions discussed during the recess, but none of the changes involved the complicity charge. (*Id*.) When the court asked whether there were any additional objections, defense counsel replied there were "no objections" to the proposed instructions but requested an instruction on the lesser included offense of assault. (*Id*. at PageID 1914-15). The trial court declined to include the lesser included offense instruction and asked counsel, for the third time, whether there was "anything further" and defense counsel replied "no." (*Id*. at PageID 1918-19). After closing arguments, the trial court provided a fourth opportunity to be heard regarding the instructions, asking whether there were "[a]ny objections to the jury instructions or verdict forms." (*Id*. at PageID 1947). Still, defense counsel did not challenge the substance of the complicity instruction.

Ohio's contemporaneous objection rule has been explained many times. It "requires the parties to preserve errors for appeal by calling them to the attention of the trial court at a time when the error could be avoided or corrected." *Twyford v. Bradshaw*, No. 2:03-cv-906, 2017 WL 4280955, at *19 (S.D. Ohio Sept. 27, 2017). The Fourth District Court of Appeals enforced the contemporaneous objection rule against Petitioner and reviewed his claim for plain error. *Blanton*, 110 N.E.3d at 24, ¶73 (noting that Petitioner "did not object to the trial court's complicity instruction" and "[w]here there exists a failure to object on the record, a plain error

analysis is appropriate"). Ultimately, the court of appeals determined that although the trial court gave an incomplete complicity instruction, no prejudicial error occurred:

> {¶ 82} Appellant contends that the instruction should have included the definition of "aiding and abetting," and that it should have included the culpable mental stat[e] for the principal crime. The trial court gave the first paragraph of the model instruction almost verbatim. We do not find the instruction given here to be an incorrect statement of the law, but an incomplete one. Despite the lack of a second paragraph, we do not find the incomplete [in]struction rose to the level of prejudicial . . . error.
>
> {¶ 83} Here, the instruction conformed to the evidence at trial. While Appellant was charged as the principal offender, at no time did the trial court or the parties refer to him as such. Furthermore, the surveillance footage and testimony established that Appellant both acted not only as an instigator of the violence, a principal offender, but also as a complicitor who contributed to the violence which reigned in the atmosphere on E4 and who joined in the beating of Lunsford.
>
> {¶ 84} And, while the trial court did not define the burden of proof, date, jurisdiction, venue, and culpable mental state as to an actual charge of complicity, the trial court had previously defined those terms as to the felonious assault and kidnapping counts. Given the surveillance footage, pictorial evidence, and testimony of the witnesses, we find the incomplete jury instruction did not rise to the level of plain error and change the outcome of the trial.

*Id*. at 24-27.

The court of appeals' review of Petitioner's jury instruction claim for plain error was "enforcement of a procedural rule" for default purposes. *Theriot v. Vashaw*, 982 F.3d 999, 1004 (6th Cir. 2020). This is because "[a] plain error analysis is not tantamount to a review on the merits," meaning the state appellate court's review for plain error does not imply it overlooked Petitioner's procedural default. *Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000). And Ohio's "contemporaneous-objection rule is an independent and adequate state ground" for foreclosing federal review. *Hand v. Houk*, 871 F.3d 390, 417 (6th Cir. 2017). In sum, Petitioner's fourth ground for relief is procedurally defaulted. *See Haller v. Warden*, No. 17-3342, 2017 WL

4764476, *2 (6th Cir. Aug. 28, 2017) (finding Petitioner's challenge to jury instruction regarding complicity procedurally defaulted where trial counsel failed to object to instruction at trial).

As cause to excuse the procedural default of his claim, Petitioner asserts that his trial counsel were ineffective for failing to object to the substance and completeness of the complicity instruction. (Doc. 18, at PageID 2111). This also happens to be subclaim (4) of Petitioner's eighth ground for relief. (Doc. 1, at PageID 13-14). Petitioner bears the burden of showing cause and prejudice to overcome a procedural default. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001).

The Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate both that his counsel's performance was deficient and that he suffered prejudice as a result. *Id*. at 687; *Shinn v. Kayer*, 592 U.S. 111 (2020). A petitioner shows deficient performance by demonstrating "that counsel's representation fell below an objective standard of reasonableness." *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (citing *Strickland*). To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013) (quoting *Strickland*, 466 U.S. at 690). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). This includes a presumption that, "under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 703. Counsel is constitutionally ineffective only if counsel's deficient performance "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that Petitioner has failed to satisfy one prong, it need not consider the other. *Strickland*, 466 U.S. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

On direct appeal, Petitioner raised a freestanding claim of ineffective assistance of trial counsel based on counsel's failure to object to the complicity instruction, and the Fourth District Court of Appeals considered and rejected that claim on the merits. Although this Court must conduct a *de novo* review of Petitioner's ineffective assistance of counsel as cause argument, the decision of the court of appeals is still persuasive. *See Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020) (citing *Hall v. Vasbinder*, 563 F.3d 222, 236-37 (6th Cir. 2009) ("An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel. The latter must meet the higher AEDPA standard of review, while the former need not.")).

The state appellate court resolved Petitioner's freestanding ineffective assistance claim as follows:

> {¶ 127} Appellant argues his counsel's representation was deficient due to a failure to object to the complicity jury instruction. In our discussion of assignment of error three above, we found no plain error occurred due to the failure to object to the complicity instruction given. We also do not find Appellant's counsel was deficient for failing to request clarification of the instruction.
>
> {¶ 128} "Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel." *State v. Rizer,* 4th Dist. Meigs No. 10CA3, 2011-Ohio-5702, 2011 WL 5299484, ¶ 37, quoting *In re Wingo,* 143 Ohio App.3d 652, 668, 758 N.E.2d 780 (4th Dist.2001), citing *State v. Carter,* 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Often times, with respect to "lesser-included offenses," defense counsel will make the strategic decision not to request a lesser-included offense jury instruction in the hopes that the jury will outright acquit the defendant on the charged offense, having not been given the option to find guilt as to the lesser-included offense.
>
> {¶ 129} Appellant argues that the complicity jury instruction was incomplete and misleading. However, it could be considered reasonable trial strategy to go for "all or nothing," taking the chance that jurors would be confused and the confusion would result in an outright acquittal on the felonious assault and/or kidnapping counts. Given that Appellant was not charged with complicity nor was he specifically identified using the language "principal offender," yet there was evidence of complicity, we find counsel's silence as to the incomplete complicity instruction to be a debatable, yet reasonable trial strategy. As such, we do not find counsel's performance to be deficient in this regard.
>
> {¶ 130} Based upon the foregoing, we do not find Appellant's trial counsel's performance fell below an objective level of reasonable representation. Because Appellant has failed to establish this first prong of the *Strickland* test, his claim of ineffective assistan[ce] has no merit.

*Blanton*, 110 N.E.3d at 37-38.

Upon *de novo* review, the undersigned agrees with the state court's resolution of this claim. A review of the state court record suggests that defense counsels' strategy was to minimize the State's theory of complicity liability and attempt to separate Petitioner's conduct from that of Michaels and McKee. Because jail surveillance video recorded the attack, counsel had no choice but to concede Petitioner's involvement in the beating of Lunsford. Given the

indisputable evidence of Petitioner's involvement, counsel sought to draw a bright line between what happened before and what happened after Lunsford was knocked unconscious. To that end, counsel argued that any serious physical harm to Lunsford occurred prior to Petitioner throwing punches. It is therefore possible that counsel believed a more complete instruction on complicity, including a definition of aiding and abetting, would have undermined the defense theory that Petitioner was only guilty of simple assault because he acted separate and distinct from the others. The fact that counsel reviewed the proposed instructions and requested other changes indicates counsels' silence regarding the substance of the complicity instruction was strategic. (*See, e.g.*, Doc. 10-5, at PageID 1913-15, discussing appropriate language regarding the kidnapping instruction, discussing clarification that serious physical harm only applied to Lunsford and not Josh Gray, requesting lesser-included offense of assault). Despite four opportunities to address the specific language regarding complicity, counsel remained silent and did not propose clarifying language.

As Petitioner points out, the Sixth Circuit granted habeas relief under similar circumstances in *Langford v. Warden*, 593 F. App'x 422 (6th Cir. 2014). In that case, the Sixth Circuit affirmed the district court's grant of habeas corpus relief where the trial court failed to instruct the jury "that conviction as an accomplice, under Ohio law, requires that the defendant have the same intent as the principal." *Id*. at 428. This is because an incomplete instruction that omits all of the elements of an offense may violate the constitution. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) ("In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement."); *Boyde v. California*, 494 U.S. 370, 380 (1990) (finding, in the context of an ambiguous jury instruction,

that "the proper inquiry . . . is whether there is a reasonable likelihood that the jury has applied the challenged instruction" incorrectly).

But this case is procedurally distinguishable from *Langford* because Petitioner procedurally defaulted his claim by failing to object at trial. As a result, this Court must consider the incomplete complicity instruction in the context of a claim for ineffective assistance of trial counsel offered as cause to excuse a procedural default. In doing so, the Court owes a great deal of deference to the strategic decisions of counsel even when they are unsuccessful. *See Baze v. Parker*, 371 F.3d 310, 320-21 (6th Cir. 2004) ("[T]he Sixth Amendment guarantees reasonable competence, not perfect litigation."); *McQueen v. Scroggy*, 99 F.3d 1302, 1315 (6th Cir. 1996) (stating that counsel "merely losing, being wrong, or miscalculating is not enough to free every person convicted of a crime").

It is also "difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington v. Richter*, 562 U.S. 86, 111 (2011). Here, Petitioner was represented at trial by two attorneys. Counsel did the best they could with what they had, and their performance through three days of trial was commendable. Under these circumstances, counsels' failure to object or request additional instructions does not meet the demanding requirements of *Strickland*.

Because Petitioner fails to establish cause and prejudice to excuse the procedural default of his underlying claim of instructional error, his fourth claim for relief must be **DISMISSED** as procedurally defaulted. For these same reasons, subclaim (4) of Petitioner's eighth ground for relief, which sets forth a freestanding claim of ineffective assistance of trial counsel regarding counsel's failure to object to the complicity instruction, lacks merit.

**D. Failure to preserve evidence grounds**

Petitioner's fifth and seventh grounds for relief involve the State's failure to preserve additional jail surveillance video, as well as the trial court's decision to hold a hearing on the issue without Petitioner present. (Doc. 1, at PageID 12-13). The Ohio Supreme Court summarized the facts and circumstances underlying this set of claims as follows:

> **{¶ 83}** At Blanton's trial, the state relied on video footage showing the attack on Lunsford taken from the catwalk outside the jail cell. As previously noted, the video shows Blanton punching Lunsford repeatedly in the head as Lunsford lay on the cell's floor. Blanton did this after watching Michael and McKee beat and stomp on Lunsford. Lunsford testified that he lost consciousness during a portion of the assault. And in the state's closing argument, the prosecutor described the video as portraying Blanton's punching an "unconscious" Lunsford.
>
> **{¶ 84}** Prior to trial, Blanton's counsel filed a motion to dismiss the charges in the jail case, claiming that Blanton's due-process rights were violated by the state's failure to retain additional video footage. A due-process violation occurs when the government fails to preserve materially exculpatory evidence or when it destroys evidence in bad faith that is potentially useful to the defense. * * * Blanton's motion focused on footage from the day of and the day after the assault, a period during which Lunsford claimed he had hidden when corrections officers approached the cell. The defense contended that the video would have shown Lunsford's actions and thus was either inculpatory or exculpatory. The gist of the defense's argument was that Lieutenant Micah Poe, the jail's administrator, had acted in bad faith by selectively retaining only video footage that was helpful to the state's case while allowing additional footage from the time of the alleged crimes to be recorded over.
>
> **{¶ 85}** The state responded that Lieutenant Poe had presented only the felonious-assault charge to the prosecutor's office and that he had therefore preserved only the portion of the video showing the assault. According to the state, it was not until the prosecutor's office had conducted its own investigation that it decided to add the kidnapping charge, and by that time, the footage had been recorded over. The trial court concluded that the defense had not met its burden of demonstrating that the video was exculpatory or destroyed in bad faith, and it denied the motion to dismiss.
>
> **{¶ 86}** Blanton was not present at the hearing on the motion to dismiss, but he addressed the video evidence during his sentencing hearing. Blanton maintained that Lunsford was never unconscious during the assault. He said that Lieutenant Poe showed him footage of the assault taken from the other end of the catwalk, which depicted Lunsford moving his arms to protect himself from Blanton's punches, and that Lunsford's movements were not visible in the footage used

> during trial that was taken from another angle. Lieutenant Poe testified during Blanton's trial that the camera on the other end of the catwalk did not capture footage of the inside of the cell; Blanton alleged that this was a lie aimed at covering up the evidence that Lunsford had remained conscious.

*State v. Blanton*, 171 Ohio St.3d 19, 37-38, 215 N.E.3d 467 (2022).

**1. Ground Seven – failure to preserve additional surveillance video**

In his seventh ground for relief, Petitioner argues the State of Ohio violated his due process rights by failing to preserve and retain all of the jail surveillance video pertaining to the assault on Lunsford. (Doc. 1, at PageID 12-13). According to Petitioner, Lieutenant Poe failed to preserve video footage from a second camera that captured the assault from a different angle than the first camera. That footage, Petitioner argues, established that he did not inflict serious physical harm on Lunsford because Lunsford was able to defend himself. (*Id*. at 13). Petitioner asserts that "[d]ue to the prosecutor's emphasis on the importance of the video evidence from the first camera, and the lack of overwhelming evidence of Petitioner's guilt, the failure to preserve the second camera footage was not harmless beyond a reasonable doubt." (*Id*.)

Petitioner raised this claim on direct appeal as part of his fifth proposition of law. *Blanton*, 110 N.E.3d at 27-32. The Fourth District Court of Appeals determined the missing video, as described by Petitioner at his sentencing hearing, was not exculpatory. *Id*. at 30-31. The court also concluded Petitioner failed to show bad faith by the State in failing to preserve the additional video. *Id*. Petitioner sought to renew this claim during his post-conviction proceedings and supplement his prior argument with his own affidavit. The Ohio Supreme Court invoked the doctrine of *res judicata* to bar additional review:

> **{¶ 87}** Blanton raised a due-process claim based on the destroyed video footage in his direct appeal. *Blanton*, 2018-Ohio-1278, 110 N.E.3d 1, at ¶ 86. The court of appeals paid particular attention to the allegations that Blanton made during his sentencing hearing, noting that he had alleged "personal knowledge of the exculpatory nature of the discarded video footage and bad faith on the part of the

investigator in failing to preserve it." *Id.* at ¶ 97. But the court of appeals concluded that even "taking [Blanton's] statements at sentencing as truthful," the video footage he described—showing that Lunsford continued to protect himself against Blanton's punches—was not exculpatory. *Id.* at ¶ 98. And it held that even assuming the video would have been potentially useful to Blanton's defense, there had been no showing that it was destroyed in bad faith. *Id.* at ¶ 99.

**{¶ 88}** Blanton's postconviction-relief claim relies primarily on the same factual allegations. He argues that the footage taken from the other end of the catwalk depicted a "very conscious Lunsford using both arms to defend himself from [Blanton's] punches," but that the footage used at trial "did not capture Lunsford's defensive arm movements because a table was blocking the view of most of his body." His petition presents additional information relating to his allegation that the video was destroyed in bad faith, however. Specifically, Blanton avers that when Lieutenant Poe showed him the footage of the fight from both camera angles, "[Poe] told me he had enough charges against me to ensure I would never go home."

* * *

**{¶ 91}** As we have already explained, the general rule of res judicata is that "a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any [claim] that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *Perry*, 10 Ohio St.2d at 180, 226 N.E.2d 104. We have recognized an exception to that rule in the limited context of postconviction ineffective-assistance-of-counsel claims involving evidence outside the record. *See Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169, at syllabus.

**{¶ 92}** Blanton asks us to expand this exception to allow a postconviction petitioner to proceed on a due-process claim based on the state's failure to preserve evidence, even when the alleged violation was known to the defense at the time of trial. In essence, he asks us to reach the merits of a claim that could have been—but was not—fully developed during the trial proceedings. This ignores our rationale for adopting the limited exception to the application of res judicata for postconviction ineffective-assistance claims: when a defendant must rely on his attorney to develop the record or use evidence, and the attorney fails to do so, there is no other way for the defendant to establish the attorney's deficient performance except by presenting evidence outside the trial record. *See State v. Hester*, 45 Ohio St.2d 71, 76, 341 N.E.2d 304 (1976). In other words, most claims of ineffective assistance cannot be developed by the defendant during the trial proceedings.

**{¶ 93}** Blanton offers no basis to expand this exception to include constitutional claims other than ineffective assistance of counsel, and we can see none. Indeed, doing so would upend decades of caselaw to the contrary. It is true, however, that res judicata precludes only those due-process claims that could have been

> developed during the trial proceedings. Thus, when a petition alleges a due-process violation based on the state's wrongful concealment of evidence beneficial to the defense, and that violation was not discovered until after trial, res judicata is no bar to the claim. *See Perry* at 179, 226 N.E.2d 104, citing *McMullen*, 3 Ohio St.2d 160, 209 N.E.2d 449.
>
> **{¶ 94}** But here, during the trial-court proceedings, the defense was aware of the state's failure to preserve the video evidence and knew of the information on which Blanton now relies in postconviction. Because the basis for Blanton's due-process claim was known to him at the time of trial and could have been fully litigated at that time, the claim is barred by res judicata.

*Blanton*, 171 Ohio St.3d at 38-39.

In his Traverse, Petitioner argues the Ohio Supreme Court improperly invoked *res judicata* where the trial court failed to hold an evidentiary hearing on the issues raised in his motion to dismiss the indictment. According to Petitioner, because a pre-trial evidentiary hearing was necessary to question Lieutenant Poe and develop additional facts regarding the content and destruction of the surveillance video, *res judicata* does not apply and this Court should review his claim *de novo*. (Doc. 18, at PageID 2126-27).

Ohio's doctrine of *res judicata* in criminal cases, set forth in *State v. Perry,* 10 Ohio St.2d 175 (1967), "bars from post-conviction proceedings any claim that could have been fully litigated at trial or on direct appeal." *Boaston v. Watson*, No. 24-3800, 2025 WL 774929, *2 (6th Cir. Feb. 7, 2025). Only claims involving evidence outside the trial record may be raised in post-conviction proceedings. "But not all evidence will do." *Jones v. Bradshaw*, 46 F.4th 459 (6th Cir. 2022). "The newly presented evidence must 'meet some threshold standard of cogency; otherwise, it would be too easy to defeat the [*res judicata* rule] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.'" *Id.* (quoting *State v. Lawson*, 103

Ohio App.3d 307, 659 N.E.2d 362, 367 (1995)). The rule is an adequate and independent state ground of decision. *Id*.

The Ohio Supreme Court rejected Petitioner's attempt to supplement his due process claim in post-conviction, finding the basis of the claim "was known to him at the time of trial and could have been fully litigated at that time . . . ." *Blanton*, 171 Ohio St.3d at 39. The record does not support a reasonable argument to the contrary. Rather, the record reflects that the trial court held a pre-trial conference with counsel and heard argument regarding the circumstances under which the additional video was deleted. Although the trial court left open the possibility of revisiting the issue once Petitioner was transferred for trial, Petitioner did not renew the issue. And Petitioner fails to explain why he waited until his sentencing hearing to inform the trial court that he had personal knowledge regarding the content of the deleted video. Additionally, the supplemental evidence he offered in post-conviction, by way of his own affidavit, essentially repackaged the personal statement he made at sentencing and upon which the state court of appeals relied in rejecting his due process argument on direct appeal. Petitioner failed to offer the kind of new and competent evidence outside the appellate record that Ohio law requires to escape the bar of *res judicata* during post-conviction proceedings.

Petitioner also fails to demonstrate that the decision of the court of appeals rejecting his due process claim on direct appeal involved unreasonable factual findings or was either contrary to or an unreasonable application of *Brady v. Maryland*, 373 U.S. 83 (1963), *California v. Trombetta*, 467 U.S. 479 (1984), or *Arizona v. Youngblood*, 488 U.S. 51 (1988). In *Brady*, the Supreme Court held that the State may not withhold exculpatory evidence that is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Evidence is "material" within the meaning of *Brady* only if there is a reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceeding would have been different. *See United States v. Bagley*, 473 U.S. 667 (1985). *Trombetta* extended the *Brady* rule to exculpatory evidence that is not suppressed but is altered or destroyed. 467 U.S. at 489. Under *Trombetta*, the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed *and* be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. (emphasis added).

By contrast, the failure to preserve evidence that is only potentially useful to a defendant is not a denial of due process unless the defendant can show bad faith on the part of the state. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). A habeas petitioner has the burden of establishing that the state acted in bad faith in failing to preserve potentially useful evidence, and "[t]he mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence." *Cunningham v. Cargor*, No. 5:24-cv-12415, 2026 WL 285961, *7 (E.D. Mich. Feb. 3, 2026). The determination of bad faith "'must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.'" *Id*. (quoting *Youngblood*, 488 U.S. at 56).

Here, the state appellate court determined it was Petitioner's responsibility to prove the missing surveillance footage was exculpatory. *Blanton*, 110 N.E.3d at 29, ¶ 94. Petitioner failed to meet this burden because counsel's argument pertaining to what the video would have shown was based on pure speculation. *Id*. at 29, ¶ 95-96 (noting that counsel argued, as to the kidnapping counts, that "[t]he video is going to show one of two things, either that they did commit the crime, or they did not commit the crime. It has to be on there, they are under surveillance."). Regarding the felonious assault count, the court of appeals considered

Petitioner's statement at sentencing that he saw the missing footage of the assault from the second camera, and concluded Petitioner's description of the video did not establish it was exculpatory:

> **{¶ 98}** * * * While defense counsel's argument on appeal is that the requested surveillance footage would be materially exculpatory as to the kidnapping count, Appellant indicated at sentencing the materially exculpatory footage somehow exonerates him as to the felonious assault conviction. Based on the record before us, the facts demonstrate that no one seems to know what was on the alleged materially exculpatory surveillance footage. And, taking Appellant's statements at sentencing as truthful, that he saw the alleged materially exculpatory footage that was later unavailable, any evidence of Lunsford, the victim "protecting himself and protecting [Appellant's] punches," is irrelevant to Appellant's guilt on either the felonious assault or kidnapping counts.
>
> {¶ 99} Based upon the foregoing, we find the requested surveillance footage was not materially exculpatory. Appellant cannot show the missing footage provides evidence which exonerates him or in any way challenges the substance of the allegations. Furthermore, in the event the surveillance footage could be somehow considered potentially useful, there has been no showing of bad faith. To establish bad faith, a defendant must show more than an accidental erasure of the tape or that the tape was reused in accordance with routine procedures. *Fox*, *supra*, at ¶ 38 (Internal citations omitted.) Based upon our de novo review of this matter, we agree with the trial court's rulings.

*Id*. at 30-31.

Petitioner is not entitled to relief on his seventh ground for relief and the undersigned recommends this claim be denied. As determined by the court of appeals, even if Petitioner's statement at sentencing is considered as true, the fact that Lunsford may have protected himself from some of Petitioner's repeated blows is still *inculpatory*. Regardless, for a due process violation, *Trombetta* requires the evidence to be exculpatory *and* there must be an absence of "comparable evidence by other reasonably available means." 467 U.S. at 489. A video of the assault was available at trial. And although Petitioner may have preferred video from a different angle, the available video was comparable evidence. Additionally, "[t]he Sixth Circuit has held that eyewitness testimony and cross-examination of the government's witnesses constitute

'comparable evidence' to audio and video recordings." *Cunningham*, 2026 WL 285961, at *6-8 (quoting *United States v. Stevenson*, No. CR 24-34-DLB-CJS, 2025 WL 2997857, at *3 (E.D. Ky. Oct. 24, 2025) (citing *Elmore v. Foltz*, 768 F.2d 773, 778 (6th Cir. 1985)). *See also United States v. Gaither*, 65 F. App'x 514, 517 (6th Cir. 2003). Comparable evidence of this sort was available here, as Lunsford and other eyewitnesses were subject to cross-examination at trial.

To the extent the video was potentially useful to show that Lunsford protected himself at points in time, Petitioner fails to meet his burden of demonstrating that the jail administrator or anyone else acted in bad faith. The prosecutor explained during the conference on this issue that the jail used a rolling hard drive where video was automatically recorded over every six days. And although the jail administrator initially saved video of the actual assault, it was not until after the six-day period that prosecutors, after reviewing the case, decided to pursue additional kidnapping charges, making video after the assault potentially relevant. (*See* Doc. 10-2, at PageID 1381-82). At that point, video from the time frame before and after the assault or video of the assault from other cameras no longer existed due to routine procedure. Petitioner bears the burden of proving bad faith but nothing here suggests anything nefarious occurred or that the video was intentionally destroyed. As the Ohio Supreme Court noted, Petitioner at most asserts that Poe "had some animosity toward" him, but "animosity doesn't equate to a showing that he deliberately destroyed evidence." *Blanton*, 171 Ohio St.3d at 41, ¶ 102. This claim must therefore be denied.

**2. Ground Five – absence during critical stage of proceedings**

In his fifth ground for relief, Petitioner argues the trial court violated his due process right to be present at a critical stage of the proceedings when the court held a pretrial hearing on his motion to dismiss without arranging for his attendance and transfer from prison. (Doc. 1, at

PageID 24). Citing *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987), Petitioner asserts his presence was necessary to the fact-finding process because he knew the lost video was exculpatory and he knew the jail administrator acted in bad faith. (Doc. 18, at PageID 2119-2120).

Petitioner raised this claim as his fifth proposition of law on direct appeal. The court of appeals rejected the claim as follows:

> {¶ 103} In this case, we must consider whether Appellant was deprived of a fair and just hearing on the motion to dismiss by his absence. Essentially, Appellant argues the trial court had a duty to hear his testimony on the issue of the additional surveillance footage and its value to his defense. We have carefully reviewed the record in its entirety and based on it, we disagree with Appellant, that his presence was required at the motion to dismiss hearing.
>
> {¶ 104} The record reflects the trial court raised the issue of when Appellant should be returned from the state prison to Adams County for the purposes of trial at the final pretrial on October 6, 2016. Defense counsel requested Appellant's return for the Friday prior to trial. The trial court advised, since trial was to begin on Monday, November 7, 2016, that it would order Appellant's conveyance to occur on the 3rd or 4th of November. However, Appellant thereafter subpoenaed specific surveillance footage on October 14, 2016 and filed a motion to dismiss based on the failure to provide the footage on October 27, 2016.
>
> {¶ 105} At the October 31, 2016 hearing on the motion, the trial court immediately addressed the issue of Appellant's absence. It is clear the court felt compelled to proceed with the hearing, when it stated, "I know of no other means of preparing counsel for the matters in the event that it does proceed to trial other than to proceed without the defendant." The court then asked if the attorneys wished to be heard on the issue. Both defense counsel and the State's counsel declined further discussion about Appellant's presence.
>
> {¶ 106} Based on the evidence contained in the record before us, Appellant's argument that he was deprived of his constitutional and procedural rights to confrontation by his absence at the October 31, 2016 hearing has no merit. The record supports these findings: (1) that Appellant's interests were adequately protected by his counsel; (2) that Appellant's presence would have contributed little; and (3) that the failure to timely object constitutes a waiver of this argument.
>
> {¶ 107} We find that while Appellant's counsel has zealously argued that the alleged materially exculpatory surveillance footage contained evidence which challenged the substance of the kidnapping count, the record reflects, as set forth in detail above, had Appellant been present at the October 31, 2016 conference, he may have made a quite different argument which would not have contributed to his

> defense. Based on the foregoing, we find no merit to Appellant's fifth assignment of error. It is hereby overruled.

*Blanton*, 110 N.E.3d at 32.

It is well settled that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). The right to be present is rooted in both the Due Process Clause and the Confrontation Clause of the Sixth Amendment. *Gray v. Moore*, 520 F.3d 616, 622 (6th Cir. 2008). This right, however, "is not absolute, but exists only when 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *United States v. Henderson*, 626 F.3d 326, 343 (6th Cir. 2010) (*quoting United States v. Brika*, 416 F.3d 514, 526 (6th Cir. 2005)). *See also Lee v. Jackson*, No. 2:19-cv-11962, 2022 WL 3161671, at *3 (E.D. Mich. Aug. 8, 2022) (noting the Constitution "does not require the defendant to be present when his 'presence would be useless, or the benefit but a shadow'") (*quoting Snyder v. Massachusetts*, 291 U.S. 97, 106-107 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964)). A defendant's presence at a hearing is "largely a matter of form" when a defendant's counsel is present and the proceedings "raise largely legal issues." *Id.* at *3 (citing *Cathron v. Jones*, 190 F. Supp. 2d 990, 1001-02 (E.D. Mich. 2002)). The right to be present may be waived and is generally subject to harmless error analysis. *See United States v. Gagnon*, 470 U.S. 522, 526-27 (1985); *Bourne v. Curtin*, 666 F.3d 411, 413 (6th Cir. 2012) (citing *Rushen v. Spain*, 464 U.S. 114, 117 (1983)) (other citations omitted). On habeas review, an error is harmless unless the defendant suffered "actual prejudice." *Davis v. Ayala*, 576 U.S. 257, 267 (2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Finally, "the exclusion of a defendant from a trial proceeding should be considered in light of the whole record." *Gagnon*, 470 U.S. at 526-27.

The record here reflects that shortly before trial, defense counsel filed a motion to dismiss the indictment on the basis that the State failed to preserve all surveillance video. (Doc. 10, PageID 43-47, 49, 52); *Blanton*, 110 N.E.3d at 28-29. The trial court held a status conference on the record to address the motion. (Doc. 10-2, at PageID 1365-97). Petitioner was not present for the conference because he was still awaiting transport from the Ohio Department of Rehabilitation and Correction, where he was serving his prison sentence in the rape case. The trial court opted to proceed with the hearing in Petitioner's absence to allow counsel adequate time to prepare for the trial. However, the court specifically advised counsel they could revisit the issue once Petitioner arrived back in Adams County for trial. (*Id*. at PageID 1366-67). Defense counsel did not object to proceeding without Petitioner, and counsel did not ask the trial court to revisit the issue once Petitioner arrived. As a result, Petitioner waived this issue. *See Gagnon*, 470 U.S. at 538 (finding a defendant's failure to assert his right to be present at a jury conference, as least in the context of Fed. R. Crim. P. 43, "was an adequate waiver" of his claim).

Additionally, to the extent any error occurred, that error was harmless. Petitioner was represented by two attorneys and counsel made factual and legal arguments advocating the defense position. The written motion to dismiss, as well as counsels' argument at the hearing, focused on speculation about the missing video and the kidnapping charges. Defense counsel expressed no knowledge regarding the substance of the missing video, suggesting it could go either way. (*See* Doc. 10-2, PageID 1370, arguing, generally, that the jail cell was under "constant 24 hour surveillance" so the deleted video would have shown "one of two things"). It was not until sentencing that Petitioner informed the trial court that the missing video was relevant to the *felonious assault* charge. Petitioner, for the first time, stated he saw the deleted

footage and it captured a different view of the assault, revealing Lunsford was conscious and able to defend himself as Petitioner punched him. (Doc. 18, at PageID 2120, citing Doc. 10-5, PageID 1985). He also claimed the jail administrator lied about the video and expressed bias. (*Id.*). But there is nothing to suggest that counsel would have permitted Petitioner to testify at a pretrial hearing regarding the facts and circumstances of the crimes charged. And even if counsel permitted Petitioner to testify, his account of the missing video fails to establish the video was exculpatory or that it would have played a significant role in his defense. Simply put, there is no showing of prejudice here.

Because Petitioner fails to establish that his absence from the pretrial conference on his motion to dismiss prejudiced him or deprived him of a fair trial, his fifth claim must be denied.

**E. Ground Six – Confrontation Clause**

In his sixth ground for relief, Petitioner argues the trial court's refusal to allow him to cross-examine the jail administrator about his failure to preserve potentially exculpatory video evidence violated his right of confrontation and right to present a complete defense under the Sixth and Fourteenth Amendments. (Doc. 1, at PageID 12). Petitioner asserts:

> This unreasonable restriction on cross-examination deprived Petitioner of the opportunity to develop testimony undermining the completeness of the video footage that was offered into evidence, its value as corroborative evidence, and the integrity and thoroughness of the investigation. As a consequence, Petitioner's jury was left with the false perception that the video footage had been screened by the parties for relevancy, that the segments played for them contained the only relevant images, and that none of the deleted segments favored the defense position. Due to lack of overwhelming evidence of Petitioner'[s] guilt, the restriction on cross-examination was not harmless beyond a reasonable doubt.

(*Id.*).

The Sixth Amendment's Confrontation Clause guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of trial. *Illinois v. Allen,*

397 U.S. 337, 388 (1970). A criminal defendant's right to cross-examine witnesses against him, however, is not unlimited. "Trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986). The Confrontation Clause thus guarantees "'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish." *Id.* (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985)); *see also Norris v. Schotten,* 146 F.3d 314, 330 (6th Cir. 1998) (no Confrontation Clause violation where relevance of questions prohibited on cross is unclear and risk of prejudice real) (citations omitted)). Where a trial court limits the extent of a criminal defendant's cross-examination but does not bar it completely, the trial court is afforded wider latitude. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2007) (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)). Under such circumstances, the test is "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Id.* (citing *Dorsey v. Parke*).

Habeas review of Petitioner's claim is subject to the harmless error review set forth in *Brecht v. Abrahamson,* 507 U.S. 619 (1993), which requires the Court to ask whether a constitutional violation "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 623. For Confrontation Clause violations, the inquiry involves consideration of several factors including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's

case." *Van Arsdall,* 475 U.S. at 673, 684; *see also Miller v. Genovese,* 994 F.3d 734, 744-45 (6th Cir. 2021) (applying the *Van Arsdall* factors under the *Brecht* standard). "If the constitutional error had no material effect, the verdict must stand. However, if the court has 'grave doubts' whether the error had a substantial or injurious effect or influence in determining the jury's verdict," the court must grant the petitioner's writ. *Jensen v. Romanowski,* 590 F.3d 373, 379 (6th Cir. 2009) (citing *O'Neal v. McAninch* 513 U.S. 432, 435–36 (1995); *Stallings v. Bobby,* 464 F.3d 576, 582 (2006)).

Where the state courts adjudicated a Confrontation Clause claim on the merits, "the *Brecht* test subsumes the limitations imposed by AEDPA." *Davis v. Ayala*, 576 U.S. 257, 270 (2015). *See also McCarley v. Kelly*, 801 F.3d 652, 655 (6th Cir. 2015) (citing *Davis* and applying *Brecht* to confrontation clause claim with AEDPA deferential review). Here, the Fourth District Court of Appeals considered the merits and rejected Petitioner's Confrontation Clause claim on direct appeal. The court of appeals determined the trial court exercised its inherent power to limit the scope of cross-examination in order to prevent confusion regarding legal issues already decided by the court:

> {¶ 108} In this assignment of error, Appellant argues the trial court foreclosed his cross-examination of Lieutenant Poe at trial regarding his failure to preserve all the video surveillance footage and this limitation violated Appellant's federal and state constitutional right of confrontation. At trial, the prosecutor objected to defense counsel's attempt to cross-examine Lieutenant Poe about the missing and allegedly relevant surveillance footage. The trial court sustained the objection.
>
> {¶ 109} Appellant contends he still retained a right to cross-examine Lieutenant Poe regarding this subject in the jury's presence for purposes of challenging the completeness of the video footage that was offered into evidence, its value as collaborative evidence, and the integrity and thoroughness of the investigation. He argues denial of the opportunity to cross-examine on this issue violated his right of confrontation and right to present a complete defense. Appellant asserts the jurors were left with the false impression that the surveillance footage contained the only relevant images.

* * *

{¶ 112} As set forth above, Evid.R. 611(B) provides that "Cross-examination shall be permitted on all relevant matters and matters affecting credibility." *Id. Potts,* ¶ 73. The pertinent portion of Lieutenant Poe's cross-examination is as follows:

> Q: You are responsible as you testified to keeping all of the footage, correct?
> A: Yes.
> Q: And the footage that we looked at here that is what you kept?
> A: Yes.
> Q: You didn't keep anything before the 18th of June?
> A: No.
> Q: And didn't keep anything after the 18th of June?
> A: No.
> Q: So just the footage that Miss Harris and I have?
> A: What was provided to the Prosecutor's office is what I downloaded.
> Q: And you did not feel it was a good idea to keep the remaining –
> Ms. Harris: Objection.
> The trial court thereafter conducted this side bar conference:
> Ms. Harris: Your Honor, just that this line of question and this topic has already been ruled on * * *. The State was previously barred from using testimony outside the video.
> Mr. Cantrell: I was just asking whether or not he kept anything else.
> The Court: Well, you asked him that and he answered that.
> Mr. Cantrell: Okay.
> The Court: Seems like you are trying to go around the Court's orders.
> Mr. Cantrell: I didn't mean it that way, I was just wanting to get that out.
> The Court: How else would it have been determined?
> Mr. Cantrell: I wasn't trying to get in what was on the video, but that they just didn't keep it.
> The Court: He answered that. I'll sustain the objection.

{¶ 113} In opening, defense counsel planted the idea the jury should cast doubt on the completeness of the footage. Counsel stated in opening:

> "You will likely see some video footage as you can imagine a jail cell is under constant video surveillance. All the allegations are to alleged to have been in that jail cell, any actions occurred in that jail cell. You'll see some video footage approximately consisting of about 157 minutes. That's all the video footage that was ever retained or kept from that jail cell. We have all these five crimes, three of which being kidnappings, one felonious assault and one

> assault, but they didn't manage to keep any of the video footage that alleged[ly] show these things."

Then, in closing, defense counsel emphasized as follows:

> "Mr. Poe testified that there was only around 157 minutes of footage, he was the one that decided what to keep. He didn't keep any more. He did talk about how they only retain footage for so long but he got footage of the 18th, he didn't get anything on the 19th when Mr. Lunsford was allegedly confined to his bed. There was no footage of that. Nor was there footage of anything prior, we didn't have any of that, it wasn't kept."

{¶ 114} Based upon our review of the transcript, we find no confrontation clause violation by the trial court's sustaining the objection and not allowing defense counsel to question Lieutenant Poe as to whether or not he "did not feel it was a good idea to keep the remaining [footage.]" First, Appellant was not foreclosed from appropriate cross-examination. If a trial court allows cross-examination to expose a motive to lie, then "it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury." *McKelton,* quoting *Nelson* at 708. Under those circumstances, the extent of cross examination is within the sound discretion of the trial court. *McKelton, supra,* citing *State v. Freeman,* 7th Dist. Jefferson No. 07JE5, 2008-Ohio-2925, 2008 WL 2425532, ¶ 12. Similarly, since defense counsel was able to plant the idea in opening that the surveillance footage was suspect, and present through cross-examination that Lieutenant Poe did not give the prosecutor's office any video footage before and after the June 18, 2016, and the jury was able to draw their own conclusions from that testimony, it is within the trial court's discretion how much more counsel got to advance that point. At sidebar, defense counsel argued he was only trying to question whether or not he kept any other footage and the trial court found that question had been asked and answered.

{¶ 115} More importantly, we find the question as to whether or not Lieutenant Poe "felt it was a good idea to keep remaining [footage]" to be an unfair question, which could have caused confusion, given the fact of the trial court's ruling that there was no bad faith on the part of the officer's in not providing additional footage. The trial court ruled the footage not provided was not materially exculpatory nor potentially useful and there had been no bad faith as it was no longer available due to routine procedures. In doing so, the trial court was required to make a legal analysis. Had the court allowed the defense counsel to continue with the line of questioning, both parties may have engaged in further questioning which may necessarily have involved consideration of legal conclusions or extrinsic matters. We are mindful that "'[a] trial court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues,

> * * * or interrogation that is repetitive or only marginally relevant.'" *State v. Potts,* 2016-Ohio-5555, 69 N.E.3d 1227 (3rd Dist.), ¶ 76. (Internal citations omitted.)
>
> {¶ 116} Additionally, there is no evidence in the record that Lieutenant Poe made any conscious determination to keep or not to keep the requested footage. The only evidence of a "motive to lie" in the record is Appellant's self-serving statement on the record that Lieutenant Poe showed him surveillance footage which helped his case and then destroyed it. Given the finding of no bad faith, the jury was not left with a false impression by the court's ruling, as it would have been if Appellant had been allowed to continue with a line of questioning insinuating that Lieutenant Poe actively took steps to prevent the jury from seeing additional surveillance footage.
>
> {¶ 117} We find Appellant's federal and state constitutional rights to confrontation of witnesses was not foreclosed and he was not prohibited from engaging in otherwise appropriate cross-examination. As such, we find no merit to the sixth assignment of error. Accordingly, it is hereby overruled.

*Blanton*, 110 N.E.3d at 32-35.

Petitioner's claim fails. First, the state appellate court determined that no error occurred where the trial court limited the scope but did not prevent Petitioner's cross-examination of Lieutenant Poe regarding the deleted surveillance video. Specifically, the state court noted that the jury was aware that Lieutenant Poe failed to save any video from before and after the June 18, 2016 assault, and the jury was free to draw their own conclusions from that testimony. *Blanton*, 110 N.E.3d at 35. This determination is not based on an unreasonable determination of the facts in light of the evidence presented, and it is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

Moreover, to the extent any error occurred, the Court finds the limits imposed on the scope of Petitioner's cross-examination of Poe were harmless under the strict standard applicable to habeas cases. The trial court permitted enough cross-examination to establish that Poe failed to download or save all the available video. And in opening statement and closing argument, defense counsel made their point by arguing the video presented at trial was incomplete and failed to tell the whole story. (*See, e.g.*, Doc. 10, PageID 445). This, coupled with the strength

of the prosecution's case which included eye-witness testimony and other video evidence, defeats Petitioner's claim. Because the Court cannot say it harbors grave doubt as to the effect or influence the trial court's restriction on cross-examination had on the jury's verdict, Petitioner's sixth ground for relief must be denied.

**F. Ground Eight – Ineffective Assistance of Counsel**

In his eighth ground for relief, Petitioner sets forth six sub-claims of ineffective assistance of trial counsel. (Doc. 1, PageID 13-14). The undersigned addressed the merits of subclaim eight (4) in connection with Petitioner's third ground for relief. The Court addresses the remaining subclaims as follows.

**1. Subclaim Eight (1)**

In subclaim (1), Petitioner argues trial counsel failed to insist on his presence at the pretrial hearing on his motion to dismiss for failure to preserve all jail surveillance video. Petitioner asserts he could have testified that the jail administrator showed him the deleted footage from the second camera and that footage contradicted the prosecutor's argument that Lunsford was unconscious and defenseless. (Doc. 1, PageID 13). He also argues counsel failed to subpoena the jail administrator to testify about the missing video. (*Id.*)

Petitioner raised at least part of this claim on direct appeal as his seventh proposition of law. The Court of Appeals rejected the claim on the merits, finding counsel "made a wise strategic decision not to insist on his client's presence" where Petitioner's proposed testimony did not exonerate him on the issue of serious physical harm and risked Petitioner admitting to the crime. *Blanton*, 110 N.E.3d at 36-37 (noting Blanton's statement at sentencing that the missing video "showed Lunsford 'protecting himself and protecting my punches'" was an admission to assaulting Lunsford). Petitioner raised this claim again in post-conviction, supporting it with his

own affidavit stating that Lieutenant Poe was biased against him. The Ohio Supreme Court rejected Petitioner's claim as follows:

> **{¶ 95}** Perhaps anticipating our holding on his due-process claim, Blanton also contends that his counsel was ineffective for not requesting that he be present for the hearing on the motion to dismiss. Blanton asserts that if he had attended the hearing, he would have told his attorneys about the footage allegedly showing that Lunsford had been conscious throughout the attack, emphasized the need for his counsel to call Lieutenant Poe to the stand, and testified on his own behalf.
>
> * * *
>
> **{¶ 99}** * * * The focus of Blanton's claim about the missing video was that, according to Blanton, the video would have shown that Lunsford never lost consciousness when Blanton was attacking him as he lay on the ground. And his claim about his absence from the hearing on the motion to dismiss is premised on his assertion that if he had been present, he would have demonstrated that the destroyed video would have shown that Lunsford was conscious during the attack and that the video was destroyed in bad faith.
>
> **{¶ 100}** But that is all a non sequitur. Blanton's allegations about the content of the video do not establish that it was materially exculpatory. To convict Blanton of felonious assault, the state was required to prove that he knowingly caused serious physical harm to Lunsford. *See* R.C. 2903.11(A)(1). Blanton watched as other inmates dragged Lunsford to the floor and began kicking him in the head. Once Lunsford was incapacitated, Blanton joined in and punched him about 15 times in the head. The attackers then dispersed for a few moments. But when Lunsford tried to stand up, Blanton dealt him a few more blows to the head. He then pinned Lunsford up against the wall, beating him until he collapsed. The group continued to attack Lunsford until he stopped moving. A doctor determined that the assault caused Lunsford to sustain a concussion. As the court of appeals concluded in Blanton's direct appeal, whether Lunsford was moving during the entirety of Blanton's assault has no bearing on whether Blanton knowingly caused him serious physical harm. *See Blanton*, 2018-Ohio-1278, 110 N.E.3d 1, at ¶ 98.
>
> **{¶ 101}** The court of appeals also determined in Blanton's direct appeal that even if the footage of the assault from a different angle would have been "potentially useful" to his defense, Blanton had made no showing that it was destroyed in bad faith. *Id.* at ¶ 99. Blanton's petition sets forth additional allegations on the issue of bad faith based on evidence outside the trial record. Blanton alleges that Lieutenant Poe laughed at him when he was convicted of the charges in the rape case and told him that he "would have 30 years to think about what [he] did." And Blanton says that following the assault on Lunsford, Poe claimed to have "enough charges against [Blanton] to ensure that [he] would never go home."

> **{¶ 102}** The problem with Blanton's bad-faith argument is that his allegations – even if believed – don't establish bad faith. At most, the allegations could establish that Poe had some animosity toward Blanton. Poe's animosity doesn't equate to a showing that he deliberately destroyed evidence. Thus, even if we credit Blanton's outside-the-record evidence about what he would have added to the hearing on the motion to dismiss, Blanton is still not entitled to relief. Blanton has failed to set forth facts that, if believed, show that the result of the hearing on the motion to dismiss would have been different had he been present. *See Cole*, 2 Ohio St.3d at 114, 443 N.E.2d 169.

*Blanton*, 215 N.E.3d 467, 489-90.

As discussed in the prior sections of this Report and Recommendation addressing the fifth and seventh grounds for relief, no constitutional error occurred when the trial court held a status conference on the motion to dismiss without Petitioner present. Because no error occurred, Petitioner cannot satisfy the prejudice prong of *Strickland*'s demanding and deferential standard for claims of ineffective assistance of counsel. Accordingly, Subclaim eight (1) must be dismissed.

**2. Subclaims Eight (2) and (3)**

In subclaim (2), Petitioner argues his trial counsel were ineffective for failing to argue it is a legal impossibility for an inmate to kidnap another inmate confined with him in the same jail. And in subclaim (3), he contends counsel should have moved to dismiss the kidnapping count on the basis that Ohio's misdemeanor coercion statute and not the felony kidnapping statute applied to the facts of this case. (Doc. 10, PageID 13).

On direct appeal, the Fourth District Court of Appeals determined the Ohio kidnapping statute applies in a jail setting. Because kidnapping another jail inmate is a legal possibility under Ohio law, the court held that "counsel can hardly be deemed ineffective for failing to advance a fruitless argument." *Blanton*, 110 N.E.3d at 37. As discussed in the prior section of this Report and Recommendation addressing Petitioner's second claim for relief, this Court is

bound by the Ohio court's interpretation and application of Ohio law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (reiterating that on habeas review, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus") (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Because the Fourth District Court of Appeals determined that an inmate may restrain the liberty of another inmate for purposes of Ohio's kidnapping statute, Petitioner cannot establish deficient performance or prejudice under *Strickland* based on counsels' failure to argue legal impossibility or coercion. Subclaims (2) and (3) lack merit.

**3. Subclaim Eight (5)**

In subclaim (5), Petitioner argues trial counsel advised him not to testify on his own behalf based on an erroneous belief that the prosecution "had an absolute right" to impeach him with his prior convictions for rape and kidnapping. (Doc. 1, PageID 14). For the following reasons, this claim is procedurally defaulted.

The record reflects that Petitioner raised this subclaim of ineffective assistance of counsel for the first time during his state post-conviction proceedings. The trial court rejected the claim on the basis of *res judicata*, finding Petitioner could have raised the claim on direct appeal. (Doc. 10, PageID 592-93). The trial court also determined the claim lacked merit. (*Id.*) The Fourth District affirmed the decision of the trial court on both points. *State v. Blanton*, No. 19CA1096, 19CA1097, 2020-Ohio-7018, ¶¶ 46-47, 2020 WL 8093524, *11 (Ohio App. 4th Dist. Dec. 23, 2020). Petitioner appealed to the Ohio Supreme Court, but he only challenged the lower courts' application of *res judicata* to bar review of his claim; he did not appeal the alternative merits decisions. The Ohio Supreme Court determined the lower courts erred by

invoking *res judicata* to bar review of his claim but held that Petitioner failed to appeal the alternative merits decision:

> **{¶ 103}** Blanton further asserts that his trial counsel gave him incorrect legal advice that influenced his decision not to testify in his own defense in the jail case. He avers that his attorneys advised him against testifying, telling him that the prosecutor would have the right to "impeach [him]" with his recent convictions in the rape case. He maintains that this advice was incomplete, in that the state does not have an absolute right to impeach a defendant with his prior convictions. Rather, under Evid.R. 609(A)(2), evidence that the accused has been convicted of crime is admissible only if the trial court "determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Blanton maintains that had he known this, he would have sought a pretrial ruling on the admissibility of his convictions from the rape case before deciding whether to testify in the jail case.
>
> **{¶ 104}** The trial court rejected this claim on two grounds. It concluded that the claim was barred by res judicata because it could have been raised on direct appeal and that the allegations failed to establish a substantive claim for relief. We disagree with the trial court's first determination and are unable to consider the second.
>
> **{¶ 105}** In determining that res judicata applied, the trial court reasoned that the fact "[t]hat the specific reasons for the decision not to testify were not in the record did not prevent [Blanton] from arguing [in his direct appeal] that counsel was ineffective for failing to have him testify." The court of appeals agreed, concluding that Blanton's claim "could have been included in the direct appeal." 2020-Ohio-7018 at ¶ 46. We disagree. Blanton's ineffective-assistance claim alleges that he was given bad legal advice regarding his decision whether to testify. That information is not in the trial record, and the claim could not have been adjudicated in his direct appeal. This claim was therefore not subject to dismissal on res judicata grounds.
>
> **{¶ 106}** Nevertheless, both the trial court and the court of appeals alternatively determined that Blanton's ineffective-assistance claim failed on the merits. *Id.* at ¶ 47. The court of appeals noted that Blanton's affidavit stated: "If called to the witness stand, I would have told the jury that Gary Lunsford was fully conscious and deflecting my punches with his arms." *Id.* The court of appeals concluded, "[Blanton] fails to see how the statement 'deflecting my punches with his arms' would not be helpful to him." *Id.* Thus, the court of appeals determined that even if Blanton's allegations were taken as true, he failed to show that he was prejudiced by his counsel's performance. *See id.* Because Blanton has not challenged that determination, that portion of the court of appeals' judgment is not before us. *See Estate of Ridley*, 102 Ohio St.3d 230, 2004-Ohio-2629, 809 N.E.2d 2, at ¶ 27, citing *Timken Mercy Med. Ctr.*, 61 Ohio St.3d at 87, 572 N.E.2d 673. We affirm the judgment of the court of appeals rejecting this claim.

*Blanton*, 171 Ohio St.3d at 41-42.

It is well settled that a federal court may not grant habeas corpus relief unless a petitioner exhausts all available state court remedies. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This includes fairly presenting each federal claim to all levels of the state appellate system to ensure the state has a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (citing *Justices v. Boston Mun. Court v. Lydon*, 466 U.S. 294, 302–03 (1984)). And a petitioner must present "the same claim under the same theory" to the state courts. *See Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987) (citing *Franklin v. Rose*, 811 F.2d 322 (6th Cir, 1987)). "If a prisoner never presented a claim to the highest state court and a state procedural rule now bars presentation of the claim, the claim is technically exhausted but procedurally defaulted." *Collins v. Fitz*, No. 3:23-CV-387-JRG-JEM, 2026 WL 458609, at *3 (E.D. Tenn. Feb. 18, 2026) (citing *Gray v. Netherland*, 518 U.S. 2074, 2080 (1996); *Coleman v. Thompson*, 501 U.S. 722, 731–32, 750 (1991)).

Petitioner argues his subclaim is not procedurally defaulted because the Fourth District's alternative discussion of the "possible merits" of his claim was dictum. (Doc. 18, PageID 2134). Petitioner cites *Cruz v. Arizona*, 143 S.Ct. 650, 661 (2023), for the proposition that "where a state-court judgment rests on a novel and unforeseeable state-court procedural decision lacking fair or substantial support in prior state law, that decision is not adequate to preclude review of a federal question." (Doc. 18, PageID 2135).

The undersigned disagrees. It is evident from the Fourth District's decision that the appellate court did more than discuss the possible merits of his claim: the appellate court decided Petitioner's claim on both procedural, and alternatively, substantive grounds. This is not a case where the appellate court merely expressed "reservations" or made an "offhand remark" about

the merits of the underlying claim. *See, e.g., Barton v. Warden*, 786 F.3d 450, 461 (6th Cir. 2015). To the contrary, the Fourth district discussed the facts of the claim and applied the *Strickland* standard to conclude counsel did not perform deficiently. The Court of Appeals stated:

> {¶47} Even if Appellant could raise an ineffective assistance claim for his counsel's failure to call him as a witness, we would find no error. In the direct appeal, we noted that we found based on the record—in particular Appellant's statements at sentencing—that Appellant's presence would have "contributed little." Likewise, in Appellant's affidavit, he avers at paragraph 14: "If called to the witness stand, I would have told the jury that Gary Lunsford was fully conscious and deflecting my punches with his arms." Appellant fails to see how the statement "deflecting my punches with his arms" would not be helpful to him. Counsel's failure to call Appellant as a witness would be considered a matter of trial strategy.

*Blanton*, 2020 WL 8093524, *11. Further, there is nothing novel or unforeseeable about the "firmly established principle of habeas review that a defendant's decision during a later step of the appeal process to drop arguments advanced in a prior step of that appeal constitutes procedural default." *Boaston v. Watson*, No. 3:22-CV-00854-SL, 2024 WL 4133851, at *16 (N.D. Ohio May 2, 2024), *report and recommendation adopted*, 2024 WL 3647611 (N.D. Ohio Aug. 5, 2024) (citing *O'Sullivan*, 526 U.S. at 848). *See also Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 456 (6th Cir. 2021) (noting that when there are two alternative grounds for a decision, "[a]n appellant's goal is to undo the judgment below" and "[i]t does no good for a track-and-field hurdler to clear just the first hurdle in a race and then sit down on the track").

Because the Ohio Supreme Court enforced the waiver against Petitioner, subclaim (5) is procedurally defaulted. However, even if this subclaim was properly before the Court, it lacks merit. Petitioner's proposed testimony regarding Lunsford's defensive actions was inculpatory and did not negate the issue of whether Lunsford suffered serious physical harm. Accordingly, Petitioner cannot establish prejudice under *Strickland*.

**4. Subclaim Eight (6)**

In subclaim (6), Petitioner argues trial counsel failed to file an affidavit to disqualify the trial judge for bias arising from the judge's relationship with the participants in Petitioner's prior rape trial. Specifically, Petitioner notes that the judge's wife was employed by the county school district where the father of the victim in the rape case served as Superintendent. (Doc. 18, PageID 2136). Petitioner asserts "[t]he judge's ongoing bias and lack of impartiality influenced his rulings and deprived Petitioner of an opportunity to develop evidence regarding the intentional failure of the jail administrator to preserve exculpatory evidence." (Doc. 10, PageID 14).

The Ohio Supreme Court rejected Petitioner's claim on post-conviction review, finding that Petitioner failed to point to any evidence suggesting bias:

> **{¶ 107}** Blanton next asserts that his counsel provided ineffective assistance by failing to move for the trial judge's recusal or to file an affidavit in this court to have him disqualified in the jail case. The lower courts concluded, as they did with the similar allegation in the rape case, that this claim was barred by res judicata. *See* 2020-Ohio-7018 at ¶ 52-54.
>
> **{¶ 108}** But the analysis for this claim is not the same in both cases. As we explained earlier, Blanton's claim regarding his attorneys' failure to pursue an affidavit of disqualification in the rape case was barred by res judicata because the factual allegations of bias were contained in the trial record, through the motion for recusal and the subsequent hearing on that motion. But Blanton's counsel did not file a motion to recuse in the jail case. As a result, the facts on which Blanton now relies are not contained in the trial record. Because the claim relies on information outside the trial record, it is not barred by res judicata.
>
> **{¶ 109}** Still, we conclude that the lower courts reached the correct judgment. The allegations of bias on which Blanton relies in his petition in the jail case stem entirely from the rape case: Blanton again highlights the fact that the judge's wife was an employee of the school district for which J.S.'s father served as superintendent. He also vaguely alleges that during the rape trial, the judge "made comments, some of which were not recorded, and rulings" that reinforced Blanton's belief that the judge was biased against him. His petition does not elaborate on the nature of the comments or rulings in the rape case. Nor does he allege any conduct by the trial judge during the jail case that suggests any improper bias. Indeed,

> Blanton contends only that his counsel should have filed a motion to recuse to prevent the judge's alleged bias in the rape case from "carrying over" to the jail case. But the fact that a judge has presided over a previous case involving the same defendant does not by itself establish bias in the current case. We therefore conclude that Blanton has failed to allege facts sufficient to establish that he was denied effective assistance of counsel in this respect, and we affirm the judgment of the court of appeals on that basis.

*Blanton*, 171 Ohio St.3d at 43.

Because the Ohio Supreme Court rejected this ineffective assistance of counsel subclaim on the merits, "'the pivotal question" is not 'whether defense counsel's performance fell below *Strickland*'s standard,' but 'whether the state court's application of the *Strickland* standard was unreasonable.'" *Davis v. Burgess*, No. 24-1154, 2024 WL 3928161, at *3 (6th Cir. Aug. 2, 2024) (citing *Harrington*, 562 U.S. at 101). This results in a doubly deferential standard of review that "gives both the state court and the defense attorney the benefit of the doubt." *Id*. (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

Here, the Ohio Supreme Court properly analyzed Petitioner's claim under *Strickland* because Petitioner failed to establish any judicial bias. *See Davis*, 2024 WL 3928161, *3 (finding "because Davis failed to show judicial bias, the state court reasonably analyzed his claims under the *Strickland*-prejudice prong" and distinguishing the standard applied in *Coley v. Bagley*, 706 F.3d 741, 750 (6th Cir. 2013)). And the decision of the Ohio Supreme Court denying Petitioner's subclaim is not an unreasonable application of *Strickland*, because Petitioner's suggestion that judicial bias carried over from the rape case to this case is speculative at best. Without identifying any particular biased conduct or comments by the trial judge, Petitioner cannot establish his attorneys performed deficiently by failing to file an affidavit of disqualification. Moreover, as Respondent notes, "[j]udicial rulings alone almost

never constitute a valid basis for a bias or partiality motion." (Doc. 11, PageID 2085, quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The undersigned therefore recommends that subclaim (6) be denied.

#### 5. Cumulative error

Finally, Petitioner argues the cumulative effect of counsel's errors prejudiced the outcome of his trial. This claim likewise fails. "The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). *See also Hill v. Mitchell*, 842 F.3d 910, 948 (6th Cir. 2016) ("Under AEDPA, we do not recognize claims of cumulative error."); *Kissner v. Palmer*, 826 F.3d 898, 903-04 (6th Cir. 2016) ("[T]he Supreme Court has not recognized cumulative error as a basis for relief in non-capital [habeas] cases."). In any event, Petitioner has not established that he is entitled to relief on any of his individual ineffective assistance of trial counsel claims, so there are no instances to cumulate.

## V. Recommended Disposition

For the foregoing reasons, the undersigned **RECOMMENDS** that Petitioner's claims be **DENIED** and this action be **DISMISSED**.

**IT IS SO RECOMMENDED.**

July 31, 2026

*/s/ Chelsey M. Vascura*
CHELSEY M. VASCURA
United States Magistrate Judge

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen

days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.